IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN D. WILSON,              :
                                   :
      Plaintiff,           :
                                     :
vs.                   :     CIVIL ACTION NO.   3:04-00839
                                   :     (JUDGE KOSIK)
WILLIAM TILLMAN and     :
JOHN FAUNCE         :
                                   :
      Defendants.     :

## MEMORANDUM

Before this court are the plaintiff's objections to the Report and Recommendation issued by United States Magistrate Judge J. Andrew Smyser granting the defendants' motion for summary judgment and denying plaintiff's motion for a default judgment. Also before the court is the plaintiff's motion for reconsideration (Doc. 76) of our April 7, 2005 order denying the plaintiff's own motion for summary judgment. For the reasons which follow, we will adopt the Report and Recommendation of the Magistrate Judge and grant the defendants' motion for summary judgment. We will also deny plaintiff's motion for reconsideration of this court's April 7, 2005 order.

## I. Background

John D. Wilson (hereinafter "Plaintiff"), an inmate at the State Correctional Institution at Frackville, Pennsylvania, filed this civil rights action on April 19, 2004, pursuant to 42 U.S.C. §1983. (Doc. 1). In his initial complaint, Plaintiff alleged that his First, Sixth, and Eighth Amendment rights were violated while he was on parole and residing at ADAPPT House, a halfway house. The named defendants included John and Jane Does, the Pennsylvania Board of Probation and Parole (hereinafter

"Board"), and three agents thereof, Agents Jeff Marrow,  Morrison, and Kramer. William Tillman, Director of the ADAPPT House, and John Faunce, record keeper of ADAPPT House, were also listed as defendants.

Plaintiff contends that while on parole on August 26, 2003, Agent Jeff Marrow informed Plaintiff that his change of home plan was not approved.  *See* Plaintiff's complaint at ¶ 9.  Plaintiff reported to the parole office in York, PA and was transported to the York County Prison.  On August 27, 2003, Agent Marrow visited the plaintiff in prison.  At that time, Plaintiff agreed to be placed in an anger management program.  *Id.* at ¶ 10.  He was then released from prison and transferred to the York parole office where he met with defendant Tillman.  Plaintiff asserts that he was then transported by defendant Tillman to ADAPPT House, a halfway house for substance abusers in Reading, PA.

Plaintiff alleges that on August 29, 2003, he asked ADAPPT House staff if he could attend a local synagogue the next day.  His request was denied as it was not made in writing.  *See* Plaintiff's complaint at ¶ 12.  Plaintiff notes that on the next Friday he submitted a written request to attend Saturday services.  Plaintiff's second request was denied due to the fact that all inmates were required to attend a group outing on the Saturday at issue.  Plaintiff additionally contends that ADAPPT participants were required to participate in the serenity prayer as part of a substance abuse program or face revocation of parole for noncompliance.  *Id.* at ¶ 13.  On September 8, 2003, he asked to be removed from the program.  *Id.*  Plaintiff was subsequently charged with violating his parole for failing to complete ADAPPT,

2

stalking a female client of the program, and threatening a male client. *Id.* A violation hearing was held on December 11, 2003. During the hearing, Plaintiff was further accused of threatening a Board agent and her family. *Id.* at ¶ 15.

Magistrate Judge Smyser reviewed Plaintiff's initial complaint pursuant to 28 U.S.C. § 1915A, noted specific deficiencies therewith, and entered an order on April 22, 2004 directing plaintiff to file an amended complaint. (Doc. 7). Plaintiff filed an amended complaint on May 19, 2004. (Doc. 8). On May 26, 2004, the Magistrate Judge issued a Report and Recommendation wherein he recommended that portions of the Plaintiff's amended complaint be dismissed pursuant to 28 U.S.C. § 1915A. Plaintiff objected to the Magistrate Judge's Report and Recommendation on June 4, 2004 in a filing styled "Response to Court Report and Recommendation." (Doc. 12). On June 21, 2004, this court adopted Magistrate Judge Smyser's Report and Recommendation and dismissed all claims against all defendants in Plaintiff's amended complaint with the exception of the First Amendment and equal protection claims against defendants Faunce and Tillman (hereinafter "Defendants") relating to their refusal to allow Plaintiff to attend synagogue, and the state law intentional infliction of emotional distress claim against the same two defendants. (Doc. 14). Plaintiff subsequently filed two motions for reconsideration on December 13, 2004 and February 9, 2005, over five months after the June 21, 2004 order. (Docs. 56 and 62). Those motions were denied. On June 25, 2004, Magistrate Judge Smyser signed a case management order setting a discovery deadline of December 27, 2004, a deadline for discovery-related motions of January 3, 2005, and a dispositive motion deadline of February 25, 2005. (Doc.17).

On January 21, 2005, Plaintiff filed a "Motion For Summary Judgment Of The Defendants Failure To Respond To Interrogatories" (Doc. 60) seeking judgment in his favor based upon Defendants' failure to provide discovery responses. On February 23, 2005, the Magistrate Judge issued a Report and Recommendation wherein he recommended that Plaintiff's motion be denied. This court adopted Magistrate Judge Smyser's Report and Recommendation on April 7, 2005, and denied Plaintiff's motion. We reviewed Plaintiff's motion for summary judgment as both a motion for discovery sanctions pursuant to Fed. R. Civ. P. 37(d), and under the summary judgment standard. Our April 7, 2005 order denying Plaintiff's motion noted that Plaintiff neglected to provide any evidence that he had forwarded discovery requests to Defendants. Accordingly, we held that sanctions pursuant to Fed. R. Civ. P. 37(d) were not available to Plaintiff as he was unable to establish that the defendants failed to answer the discovery "after proper service of the interrogatories." Fed. R. Civ. P. 37(d). The court additionally determined that Plaintiff failed to establish that summary judgment in his favor was warranted.

After Magistrate Judge Smyser filed his Report and Recommendation on Plaintiff's motion for summary judgment, but before this court adopted the Report and Recommendation, Defendants filed their own motion for summary judgment on February 25, 2005 (Doc. 68). Defendants asserted that Plaintiff could not establish First Amendment and equal protection claims relating to Defendants' refusal to allow Plaintiff to attend synagogue, and that Plaintiff's claim of intentional infliction of emotional distress was similarly without merit. Plaintiff's response argued, in conclusory fashion, that summary judgment should not be awarded in Defendants'

4

favor.  Plaintiff recycled arguments not relevant to the remaining claims.  Specifically, Plaintiff devoted much of his response to the revocation of his parole and alleged misconduct on the part of the Board.

Defendants filed a reply brief in support of summary judgment on March 21, 2005. (Doc. 71).  Plaintiff filed a subsequent response and reply brief (Docs. 72 and 73) on March 29, 2005 without seeking leave of court, in violation of Local Rule 7.7. Accordingly, Plaintiff's second response and brief will not be considered in our determination of Defendants' motion.  Magistrate Judge Smyser ordered Defendants to file a statement of material facts pursuant to Local Rule 56.1 on May 4, 2005 (Doc. 80).  On May 16, 2005, Defendants filed a statement of facts (Doc. 82).  Plaintiff filed a responsive statement and brief on May 25, 2005 (Docs. 86 and 87).

On May 23, 2005, Plaintiff filed a motion for default judgment and brief in support thereof (Docs. 83 and 84).  Plaintiff's motion asserts that default judgment is warranted because Defendants failed to file a statement of material facts by May 17, 2005 as required by Magistrate Judge Smyser's May 4, 2005 order.  Plaintiff additionally restated the allegation that Defendants failed to answer discovery. Plaintiff's brief in support of default judgment revisited the claims of constitutional violations relating to the revocation of his parole.  Defendants filed a response to the default judgment on June 10, 2005 (Doc.90).  Defendants argued that they timely filed a Local Rule 56.1 statement in accordance with Magistrate Judge Smyser's order. Defendants additionally noted that much of Plaintiff's motion was not relevant to the claims remaining in the instant lawsuit.   Plaintiff subsequently filed two replies, entitled "Plaintiffs' Response to Defendants Response To Plaintiffs' Motion For Entry

Of Default Order [sic]" and "Brief In Support" (Docs. 92 and 93) on June 27, 2005. Plaintiff did not seek leave of court prior to filing the second reply brief as required by Local Rule 7.7.

On July 7, 2005, Magistrate Judge Smyser filed a Report and Recommendation granting Defendants' motion for summary judgment and denying Plaintiff's motion for entry of default judgment. Magistrate Judge Smyser noted that Defendants filed a statement of material facts pursuant to Local Rule 56.1 that refuted Plaintiff's allegations that he was precluded from attending synagogue. The Magistrate Judge additionally determined that Plaintiff's responsive statement of facts pursuant to Local Rule 56.1 failed to address the facts material to the disposition of the remaining claims. Magistrate Judge Smyser recommended granting Defendants' motion for summary judgment, concluding that there is neither evidence that Defendants interfered with the First Amendment rights of Plaintiff, that Plaintiff was denied equal protection, nor facts sufficient to support a claim for intentional infliction of emotional distress. Magistrate Judge Smyser additionally recommended denying Plaintiff's motion for default due to the fact that Defendants did file a Local Rule 56.1 statement of material facts in the time allotted by his prior order.

Plaintiff filed, "Plaintiff's Response To The Judges Report And Recommendation" and "Plaintiff's Brief In Support In Opposition Of The Judges Report And Recommendation Favoring Summary Judgment" (Docs. 95 and 96) on July 12, 2005. We will treat Plaintiff's two filings as objections to the Report and Recommendation. In his objections, Plaintiff asserts that entry of summary judgment is improper in this instance as such an order would be based upon the credibility of Defendants alone.

While Plaintiff mentions some issues not relevant to the remaining causes of action, he does address the relevant claims by alleging that Defendants prohibited him from attending synagogue. Specifically, Plaintiff contends that he was precluded from attending synagogue due to the fact that ADDAPT required him to attend a group outing on the Sabbath, despite having abided by the proper written procedures to request permission. Essentially, Plaintiff concludes that Defendants' actions in prohibiting him from attending synagogue on one occasion is sufficient to warrant submitting this case to a jury. Plaintiff provides no argument regarding the recommended disposal of the equal protection or intentional infliction claims. Moreover, Plaintiff does not object to the recommended denial of his motion for entry of default judgment.

Defendants filed a response to Plaintiff's objections on July 26, 2005 (Doc. 97). Defendants contend that Plaintiff failed to state any real objections to the Report and Recommendation. Rather, Defendants argue, Plaintiff merely restated allegations not relevant to the continuing proceedings and complained about the Magistrate Judge's Report. Defendants assert that the fact that Plaintiff was required to attend a group outing and was thereby precluded from attending synagogue one Saturday, does not constitute a violation of First Amendment rights. Finally, they allege that Plaintiff did not exhaust all administrative remedies available to him in violation of 42 U.S.C. § 1997e(d)(2).

While defendant's motion for summary judgment was pending before the Magistrate Judge, Plaintiff filed a motion for reconsideration of this court's April 7, 2005 order denying Plaintiff's motion for summary judgment. Plaintiff signed his

motion for reconsideration and brief in support thereof on April 19, 2005 (Docs. 76 and 77).  Attached to the motion for reconsideration are interrogatories and a request for the production of documents that Plaintiff alleges he forwarded to Defendants on November 30, 2004.

Prior to filing the motion for reconsideration, Plaintiff had failed to provide this court with any evidence that he had forwarded discovery to Defendants.  Nonetheless, Plaintiff filed numerous previous discovery motions.  A complete recitation of Plaintiff's discovery motions is included in our April 7, 2004 memorandum opinion denying Plaintiff's motion for summary judgment, and will not be restated here.

## II.  Motion For Reconsideration

Middle District Local Rule 7.10 requires that motions for reconsideration be filed within ten (10) days of the challenged order.  The purpose of a motion for reconsideration is to correct manifest errors of law or to present newly discovered evidence.  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985).  Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration.  *See Id. (citing DeLong Corp. v. Raymond International Inc.*, 622 F.2d 1135, 1139-40 (3d Cir.1980)); *see also Pavlik v. Lane Ltd./Tobacco Exporters Intern*, 135 F.3d 876, n.2 (3d Cir.1998).  Stated another way, a district court should not consider evidence that is presented to it for the first time in a motion for reconsideration that was previously available to the moving party.  A motion to reconsider must be based on one of three grounds: (1) the discovery of evidence that was unavailable at the time of the previous motion; (2) an intervening change in

8

controlling law; or, (3) the need to correct an error of law or to prevent a manifest injustice. *Hartford Fire Ins. Co. v. Huls Am., Inc.*, 921 F.Supp. 278, 279 (E.D.Pa.1995). A motion to reconsider cannot be brought merely to request that the court "rethink what [it] had already thought through." *Glendon Energy Co. v. Borough of Glendon*, 836 F.Supp. 1109, 1122 (E.D.Pa.1993).

In this instance, we entered the order denying Plaintiff's motion for summary judgment on April 7, 2005. Plaintiff signed his motion for reconsideration and brief in support thereof (Docs. 76 and 77) on April 19, 2005. The motion was docketed with this court on April 25, 2005. Even if we assume that Plaintiff provided the motion to prison officials, and thereby filed the motion, on April 19, 2005, the ten day period permitted by the Local Rules had already expired. Accordingly, we will dismiss Plaintiff's motion for reconsideration as untimely.

Even if we were to review the substance of the motion for reconsideration, the motion would nonetheless fail. Plaintiff's argument for reconsideration is based solely upon the discovery requests allegedly mailed to Defendants on November 30, 2004. The discovery requests cannot be considered newly discovered, and therefore will not serve as a valid basis for reviewing the April 7, 2005 order. Rather, Plaintiff possessed the documents prior to filing his summary judgment motion. We may not consider such evidence. *See Harsco Corp*, 779 F.2d at 909. Moreover, Plaintiff's motion for reconsideration does not assert either of the two additional bases recognized as grounds to reconsider a prior order: an intervening change in controlling law or the need to correct an error of law or to prevent a manifest injustice.

Accordingly, this court would nonetheless be constrained to deny Plaintiff's motion for reconsideration had it been filed in accordance with the time requirements of Local Rule 7.10.

### III. Plaintiff's Challenges To The Report And Recommendation

When objections are filed to a Report and Recommendation of a Magistrate Judge, we must make a *de novo* determination of those portions of the report to which objections are made.  28 U.S.C. §636(b)(1);  *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).[1]  In doing so we may accept, reject or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.  28 U.S.C. §636(b)(1);  Local Rule 72.3.  Although our review is *de novo*, we are permitted to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem  proper.  *United States v. Raddatz*, 447 U.S. 667, 676,  100 S.Ct. 2406, 2413 (1980).

### A.    Plaintiff's Motion For Default Judgment

Plaintiff filed his motion for entry of default judgment on May 23, 2005.  Among the many arguments irrelevant to the remaining causes of action, Plaintiff asserts two bases for entry of default judgment against Defendants.  The first  allegation is that

---

[1]

In this instance, Plaintiff's objections to the Report and Recommendation challenges neither the grant of summary judgment in favor of Defendants on the equal protection and intentional infliction of emotional distress claims, nor the recommended denial of Plaintiff's motion for entry of default judgment.  Rather, Plaintiff's objections may only be read as challenging the recommendation that judgment be entered for Defendants on Plaintiff's First Amendment free exercise claim.  As Plaintiff is a pro se prisoner litigant, and because the attached order will dismiss all remaining claims in Plaintiff's action, we will review the entire motion for summary judgment.

Defendants neglected to file a Local Rule 56.1 statement of material facts within the time allotted by Magistrate Judge Smyser in his May 4, 2005 order. Plaintiff's second argument for entry of default judgment is that Defendants failed to answer discovery forwarded by Plaintiff on November 30, 2004. Plaintiff concludes that judgment should be entered in his favor. Plaintiff is in error.

Plaintiff's first argument, that Defendants failed to provide a timely Local Rule 56.1 statement of material facts, is belied by the docket. Magistrate Judge Smyser's May 4, 2005 order mandated that Defendants file a Rule 56.1 statement by May 17, 2005. A review of the docket reveals that Defendants filed the statement of material facts on May 16, 2005. (Doc. 82). Accordingly, Plaintiff's first argument for entry of default judgment is without merit.

Plaintiff's second argument in support of the entry of default concerns Defendants' failure to answer discovery. As noted in the Background section of this memorandum, Plaintiff filed numerous prior discovery motions. Plaintiff's failure to provide proof that discovery was ever forwarded to Defendants compelled this court to deny all of Plaintiff's prior discovery motions. While Plaintiff did not attach discovery to the instant motion, he finally provided evidence of his discovery requests when he included the November 30, 2004 interrogatories and a request for production as exhibits to his separate motion for reconsideration. Given that he has now provided this court with the discovery requests, and because plaintiff is a pro se litigant, we are inclined to overlook his failure to attach the discovery requests to the instant motion for default judgment. We will not overlook, however, that the discovery deadline passed on December 27, 2004, the deadline for discovery-related motions on January

11

3, 2005, and the deadline for dispositive motions on February 25, 2005.  Plaintiff did not move to extend the above deadlines or seek leave to file the motion for default judgment beyond the motion deadline.  Accordingly, we will deny Plaintiff's motion as untimely.

**B.    Defendants' Motion For Summary Judgment**

Defendants contend that Plaintiff cannot establish that Defendants inhibited his right to the free exercise of his religion.  Defendants further assert that they did not deny Plaintiff equal protection of the laws by discriminating against him on the basis of his religion.  They challenge the claim of intentional infliction of emotional distress by denying that their actions in precluding Plaintiff from attending synagogue constituted extreme and outrageous conduct.  Finally, Defendants posit that Plaintiff did not exhaust the state administrative remedies prior to filing the instant 42 U.S.C. §1983 action.  Defendants conclude that the Report and Recommendation should be adopted and summary judgment entered in their favor.

**i.    Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, the court must view the record in a light most favorable to the non-moving party.  *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001).  Moreover, the court must draw all reasonable inferences in favor of the non-

movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

The burden rests with the moving party to demonstrate that there is no genuine issue of material fact. Thereafter, the non-moving party must counter with evidence that supports each essential element of his or her claim. *Skerski*, 257 F.3d at 278 (citing *Pittston Co. Ultramar Am. Ltd. v. Allainz Ins. Co.*, 124 F.3d 508, 515 (3d Cir. 1997)). The non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts," and where the record taken as a whole could not allow a rational fact-finder to find in favor of the non-moving party, summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### ii.     Plaintiff's First Amendment Free Exercise Claim

### a.     First Amendment Rights of Prisoners

Individuals do not lose their First Amendment right to the free exercise of religion while they are incarcerated in prison or housed in a halfway house. The constitutional rights possessed by an inmate, however, "are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475 (2001). Their right to the free exercise of religion,  "must in some respects be limited in order to accommodate the demands of prison administration and to serve valid penological objectives." *Fraise v. Terhune*, 283 F.3d 506, 515 (3d Cir. 2002). Regulations reasonably related to legitimate penological interests generally pass constitutional muster. *See Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254 (1987). Citing the Supreme Court's *Turner* opinion, the Third Circuit

explained the four prong analysis to be applied to First Amendment claims by prisoners.  *See Sutton v. Rasheed*, 323 F.3d 236 (3d Cir. 2003) (applying *Turner* analysis in holding prison's prohibition of Nation of Islam texts violated prisoner's First Amendment Rights).  First, the court must determine whether the regulation bears a "valid, rational connection" to a legitimate and neutral governmental objective.  *Id.* at 252.  When evaluating the first step, prison officials' judgments are afforded great deference.  *Id.* at 253.  Second, the court weighs whether prisoners have alternative ways of exercising the circumscribed right.  *Id.*  Third, we are to consider whether accommodating the right would have a deleterious impact on other inmates, guards, and the allocation of prison resources generally.  *Id.*  The fourth and final step is to determine whether alternatives exist that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests."  *Id. (*citing *Fraise*, 283 F.3d at 513-14 (quoting *Turner*, 482 U.S. at 89, 107 S.Ct. 2254)).

### b.  Facts Relevant to First Amendment Claim

Defendants and Plaintiff both filed briefs regarding Defendants' motion for summary judgment.  Both parties filed Local Rule 56.1 statements of fact relating to the summary judgment motion.  Moreover, Defendants and Plaintiff included exhibits with their filings related to the motion for summary judgment.  Plaintiff, however, only included a letter from the Department of Corrections denying his grievance regarding revocation of parole.  Defendants provided this court with more extensive evidence, including portions of the transcript of Plaintiff's parole revocation hearing, part of the transcript of Plaintiff's deposition, an affidavit signed by defendant, William Tillman,

the Adappt House General Information packet, the authorization form granting Plaintiff's formal request to attend synagogue, and the religious institution directory provided to ADAPPT residents.  The following facts are  undisputed.

ADAPPT required inmates to submit written requests to attend off-site religious services.  ADAPPT posted a list of area religious institutions and permitted them to attend any service of their choice provided that the religious institution approved of the attendance of the ADAPPT resident and agreed to watch them during services.  The posted list also noted that residents had to submit requests to attend weekend services by the previous Wednesday at noon.  *See* ADAPPT Religion Directory.  The religious directory was posted on the ADAPPT House bulletin board at all times.  *See* Plaintiff's deposition at 28:11.  Plaintiff testified at his deposition that he made an oral request on Friday, August 29, 2003, to attend synagogue the next day.  *Id.* at 28:20.  The request was denied due to the fact that the request had not been made in writing.  On September 5, 2003, Plaintiff submitted a written request to attend synagogue.  *Id.* at 31:15.  Again, the request was made one day before the service Plaintiff wished to attend.  Plaintiff was precluded from attending synagogue on the next Sabbath because he was required to attend a group outing at a park.  Plaintiff does not allege that he was prevented from praying privately, reading the Torah at  ADAPPT House, or pursing religious activities other than attending services outside the ADAPPT House on the Jewish Sabbath.  Plaintiff was only precluded from attending Sabbath services on two occasions.  *See* Plaintiff's deposition at 49:15.  Plaintiff asked to be removed from ADAPPT House.  *Id.* at 43:6.

15

### c.      First Amendment Claim Dismissed

Employing the four-prong *Turner* analysis, the ADAPPT requirement of written approval and compulsory attendance at a group outing cannot be seen as violations of the inmate's First Amendment rights.   The first prong of the *Turner* analysis does not support Plaintiff's claim of a Constitutional violation, as the requirement of written approval bears a valid, rational connection to the legitimate interest of protecting the community and monitoring the location of the halfway house inmates when out of the supervision of ADAPPT staff.   The second prong also favors the Defendants as Plaintiff had alternative ways of exercising his Constitutional right.   Specifically, there are no allegations that Plaintiff was precluded from praying in ADAPPT House and the ADAPPT rules provided that he could attend synagogue after filing a written request and receiving approval.

The third prong in the *Turner* analysis supports a finding that no Constitutional violation occurred.  Accommodating Plaintiff's oral request on short notice or allowing Plaintiff to attend services when the staff and other inmates were at a group outing could have had a deleterious impact on ADAPPT staff and the allocation of ADAPPT resources.   The oral request the day before services would not provide Defendants with sufficient time to gain the approval of the religious institution, possibly requiring one or more ADDAPT staff members to chaperone Plaintiff to the synagogue. Moreover, permitting Plaintiff to attend synagogue while ADAPPT staff and inmates were at a group outing could create difficulties monitoring the whereabouts of Plaintiff in the community.  The situation presented could jeopardize the safety and order of

the halfway house and the community.  Finally, the fourth prong of the *Turner* analysis favors Defendants in that ADAPPT offers the reasonable alternative of attending religious services after written request and upon the agreement of the religious institution.   Additionally, Plaintiff makes no allegations that he was otherwise precluded from worship within the confines of ADAPPT House.

Viewing the record in the light most favorable to Plaintiff, and accepting his allegations as true, there is no genuine issue as to any material fact relating to his First Amendment claim.   Simply stated, Plaintiff's allegations, that he was twice precluded from attending synagogue unsupervised, cannot support a claim that his First Amendment right to the free exercise of religion was violated by Defendants. Summary judgment is appropriate as no rational fact-finder could find in favor of Plaintiff.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587.[2]

### iii.   Equal Protection Claim Dismissed

Plaintiff asserts an equal protection claim in the second count of his amended complaint.  The amended complaint states only that Defendants' refusal of Plaintiff's request to attend synagogue denied Plaintiff equal protection of the laws.  Defendants' motion contends that Plaintiff has not offered any proof that he was treated differently from any other resident at ADAPPT.  Defendants submitted the affidavit of William Tillman that states ADAPPT House is a secular institution.  *See* Tillman Affidavit at

---

[2]

Plaintiff's various briefs and motions contain vague allegations that he was forced to recite Christian prayers as part of the his drug rehabilitation program at ADAPPT. The allegations could serve as a basis for First Amendment establishment claim. Plaintiff's amended complaint, however, does not include any such claim. Accordingly, there is no establishment claim in the instant action.

¶ 2.  The affidavit further notes that residents are permitted to practice the religion of their choice.  *Id.* at ¶ 5.  Defendants conclude that Plaintiff's equal protection claim must be dismissed.

"To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated."  *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985)).  Additionally, the four-prong *Turner v. Safley* analysis is equally applicable to Prisoners' equal protection claims. *Id.* (internal citations omitted).  In this instance, Defendants have demonstrated, through affidavits and deposition testimony, that there is no genuine issue of material fact regarding Plaintiff's equal protection claim.  Plaintiff has neglected to present a coherent argument or any evidence to support his claim that he was denied equal protection of the law.  Plaintiff has not contested the evidence supplied by Defendants.  Plaintiff's response to summary judgment, responsive statement of facts, and objections to the Report and Recommendation fail to offer any proof that Plaintiff was singled out and treated differently on the basis of his race or religion.  Summary judgment in favor of Defendants on the equal protection claim is warranted.  *See Williams*, 343 F.3d at 221 (holding plaintiff must present evidence that he was treated differently from persons similarly situated to prevail in equal protection claim); *See also Skerski*, 257 F.3d at 278 (holding after movant demonstrates lack of genuine issue of material fact,  non-moving party must counter with evidence that supports each essential element of his claim).

18

### iv.    Intentional Infliction of Emotional Distress Claim Without Merit

This court's June 21, 2004 order dismissed much of the amended complaint, but retained, among the claims discussed above, Plaintiff's claim for intentional infliction of emotional distress against William Tillman and John Faunce.  Plaintiff's claim of intentional infliction of emotional distress is contained in Count III of his amended complaint.  Paragraphs twenty-four (24) and twenty-five (25) of the amended complaint are the only paragraphs in Count III that address the actions of the remaining defendants.  Paragraph twenty-four states, "[i]t's cruel and intentional for John Faunce and William Tillman to deny Plaintiff the right to attend the local Synagogue."  *See* Amended complaint at ¶ 24.  Paragraph twenty-five states, "[i]t's cruel and intentional for John Faunce to fabricate a report to obtain incarceration for Plaintiffs' refusal to recite the serenity prayer".  *See* Amended complaint at ¶ 25.

Defendants' motion contains some relevant challenges to Plaintiff's claim of intentional infliction of emotional distress.[3]   Defendants argue that Plaintiff cannot establish that Defendants acted with the requisite intent to support a verdict in favor of Plaintiff.  They further contend that Plaintiff failed to provide any evidence that he experienced severe emotional distress as a result of being precluded from attending synagogue.

---

[3]

Much of Defendants' motion argues for the dismissal of Plaintiff's claim for intentional infliction of emotional distress based upon his allegation that he was forced to recite the serenity prayer during drug rehabilitation treatment.  This issue, however, is not before the court.  As noted above, the two paragraphs in the amended complaint containing allegations against Defendants do not assert a claim based upon either of Defendants' compelling Plaintiff to recite the serenity prayer.

Plaintiff's response to summary judgment (Doc. 72) and brief in opposition to summary judgment (Doc. 73) do not address the challenges to the claim for intentional infliction of emotional distress.   Plaintiff's lone reference to emotional distress is found in the brief in opposition. *See* Plaintiff's brief in opposition at ¶ 4.   In that paragraph Plaintiff discusses the emotional trauma that resulted from the Board of Probation and Parole's decision to revoke his parole.   That issue, however, was disposed of in our earlier, June 21, 2004 order dismissing certain portions and defendants from Plaintiff's amended complaint.

Intentional infliction of emotional distress is a state law claim.   The Third Circuit recently explained the cause of action as follows: "[t]he tort of intentional infliction of emotional distress requires a showing that the defendants acted in a manner 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.'" *McGreevy v. Stroup*, __ F.3d __, 2005 WL 1515891 (3d Cir. 2005) (citing Restatement (Second) of Torts § 46 cmt.; *Jones v. Nissenbaum, Rudolph & Seidner*, 244 Pa.Super. 377, 368 A.2d 770, 773 (1976))

In this instance, all parties agree that Plaintiff was precluded from attending synagogue on two occasions.   Defendants have provided evidence in the form of affidavit testimony and written policies, that ADAPPT House permitted residents to attend off-site religious services provided that certain requirements on notice and approval were met.  All evidence submitted by Defendants and Plaintiff suggests that Defendants' actions were consistent with their positions at ADDAPT House and were

in no way outrageous or malicious.  Plaintiff's own testimony evidences that both requests were made the day before the Sabbath, two days after the Wednesday deadline for notifying ADDAPT House staff of a request to attend weekend services. Plaintiff further acknowledges that only one request was properly made in writing. Plaintiff has provided no evidence to support his bare conclusion in paragraph 24 of the amended complaint that Defendants had a nefarious purpose for denying his two requests to attend services.

Similarly, Plaintiff offered no support for the conclusion in paragraph 25.  There is no evidence that defendant Faunce fabricated a report in order to have Plaintiff's parole revoked.  Rather, Plaintiff acknowledged that he requested to be taken out of ADDAPT House.  Plaintiff cannot now be heard to complain that his removal from the program and placement back into prison was the consequence of anyone else's actions.

As part of our *Turner* analysis, we determined that Defendants' actions in denying Plaintiff's request to attend synagogue on the two occasions at issue, bore a valid, rational connection to a legitimate and neutral governmental objective.  Chief among those objectives are the security of the facility and the safety of the surrounding community.  It is obvious at this stage of the litigation, that Defendants' conduct was in no way, "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.'"  *See McGreevy*, __ F.3d __, 2005 WL 1515891.  Defendants have established that there is no genuine issue of material fact as to the claim of intentional infliction of emotional distress.  Accordingly, summary judgment in favor

of Defendants on this claim is warranted.[4]

## III. CONCLUSION

Viewing the record in the light most favorable to Plaintiff, we determine that there are no genuine issues of fact relating to Plaintiff's First Amendment, equal protection, or intentional infliction of emotional distress claims. Defendants' conduct in preventing Plaintiff from attending synagogue on two occasions was permissible under the Supreme Court's *Turner v. Safley* analysis, and did not violate Plaintiff's First Amendment rights. Moreover, their actions were not so outrageous as to support a claim for intentional infliction of emotional distress. Defendants established that Plaintiff cannot support an equal protection claim as there is no evidence that he was treated differently from other residents at the ADAPPT House. *See Williams*, 343 F.3d at 221. Plaintiff's motion for default judgment will be dismissed as Defendants provided a timely Local Rule 56.1 statement of facts in accordance with Magistrate Judge Smyser's order and because the deadline for dispositive motions passed prior to Plaintiff's filing his motion. Accordingly, we will adopt Magistrate Judge J. Andrew Smyser's recommendation to grant Defendants' motion for summary judgment and

---

[4]
As we will grant Defendants' motion for summary judgment on substantive grounds, we will not address Defendants' contention that Plaintiff failed to exhaust his administrative remedies in contravention of 42 U.S.C. § 1997e(a). Defendants' failure to exhaust assertion would nonetheless fail as they offered no evidence in the form of Department of Corrections records or affidavits of officials, indicating that Plaintiff neglected to pursue a grievance regarding the alleged free exercise of religion and equal protection violations, or the allegations relating to the intentional infliction of emotional distress claim. Moreover, Defendants did not raise failure to exhaust as an affirmative defense in their answer to Plaintiff's amended complaint. *See Harvey v. City of Philadelphia*, 253 F.Supp.2d 827, 829 (E.D.Pa. 2003) (holding, "failure to exhaust must be raised as an affirmative defense").

deny Plaintiff's motion for a default judgment.   (Doc. 68, 83 and 85).   We will additionally deny as untimely Plaintiff's motion for reconsideration (Doc. 76) of this court's April 7, 2005 order.   Plaintiff's amended complaint will be dismissed with prejudice.   An appropriate order is attached.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN D. WILSON,                          :
                                         :
            Plaintiff,                   :
                                         :
vs.                                      :          CIVIL ACTION NO.   3:04-00839
                                         :          (JUDGE KOSIK)
WILLIAM TILLMAN and                      :
JOHN FAUNCE                              :
                                         :
            Defendants.                  :

## **ORDER**

AND NOW, this 3rd day of August, 2005, IT IS HEREBY ORDERED THAT:

[1] the Magistrate Judge's Report and Recommendation (Doc. 94) is adopted;

[2] defendants, Tillman and Faunce's motion for summary judgment (Doc. 68) is granted;

[3] plaintiff's motions for default judgment (Doc. 83 and 85), are denied;

[4] plaintiff's motion for reconsideration (Doc. 77) of this court's April 7, 2005 order is denied;

[5] judgment is hereby entered in favor of the defendants and against the plaintiff; and,

[6] the Clerk of Court is directed to close this case and forward a copy of this Memorandum and Order to United States Magistrate Judge J. Andrew Smyser.

_____
_____
_____          s/Edwin M. Kosik
                                                  United States District Judge